IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARK A. MANN,

    Plaintiffs,

    v.

UNITED STATES OF AMERICA,

    Defendant.

Case No. 6:14-cv-01774-AA
OPINION AND ORDER

AIKEN, Chief Judge:

    Defendant United States of America, through the Department of Transportation (DOT), moves for summary judgment against plaintiff pursuant to Federal Rule of Civ. P. 56. For the reasons set forth below, DOT's motion is granted.

## Background

    Plaintiff is a sole proprietor who provides project

1 - OPINION AND ORDER

engineering services to general contractors completing highway and airport projects. According to plaintiff, he prepares design files to facilitate construction surveying and analysis of earthwork quantities for contract payments. Mann Decl. at 1-2. The services plaintiff provides require detailed information regarding the quantities of materials used to complete a project.

Relevant to this case, plaintiff sought information about the Tiller Trail Highway Project (the Project) from DOT under the Freedom of Information Act (FOIA).[1] The Project was an approximately mile-long project between Canyonville and Trail, Oregon that involved grading, slope stabilization, drainage improvements, and asphalt paving.[2] Specifically, plaintiff sought: 1) the GEOPAK CAD design file in MicroStation DGN format; 2) a LandXML ("XML") file of the horizontal and vertical alignments; 3) an XML file of the original ground surface; and 4) an XML file of the final design surface.

On May 1, 2014, DOT provided plaintiff twenty-one files in the format in which DOT maintained them; DOT did not provide the

---

[1] The Western Federal Lands Highway Division, a part of the DOT, administered the Project in this case, and is the agency identified as "DOT." Aguirre Decl. at 2.

[2] According to DOT, construction work on the Project was completed on October 27, 2014.

information in the XML format requested by plaintiff due to the burden of converting the underlying data to XML format. Plaintiff subsequently filed another FOIA request seeking: 1) a GEOPAK XS-List Report (cross-section files in XSR format) of the original ground surface; 2) the horizontal and vertical alignments for the final road design in XML format; 3) the original ground three-dimensional surface data in XML format; and 4) the final design three-dimensional surface data in XML format. This request was also denied.

On November 7, 2014, plaintiff filed a complaint under FOIA seeking production of the requested information in XML and XSR formats. On May 4, 2015, DOT moved for summary judgment on plaintiff's claims.

## Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue is genuine if a reasonable trier of fact could find in favor of the non-moving party." Rivera v. Phillip Morris, Inc., 395 F.3d 1142, 1146 (9th Cir. 2005) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is material if it could affect the outcome of the case. Id. The court reviews evidence and draws inferences in the light most favorable to the non-

3 - OPINION AND ORDER

moving party. Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 988 (9th Cir. 2006) (citing Hunt v. Comartie, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting former Fed. R. Civ. P. 56(e)).

## Discussion

DOT argues that files in XML or XSR format are not "readily reproducible" within the meaning of FOIA. DOT also contends that, because the DOT has taken reasonable efforts to maintain its records in a format that is readily reproducible, it has no obligation to produce the data sought by plaintiff in the requested XML and/or XSR formats.

The FOIA requires agencies to provide information "in any form or format requested… if the record is readily reproducible by the agency in that form or format." 5 U.S.C. § 552(a)(3)(B). Further, "[e]ach agency shall make reasonable efforts to maintain its records in forms or formats that are reproducible for purposes of this section." Id. DOT regulations likewise provide that information will be produced in any readily reproducible format. See 49 C.F.R. § 7.26(c) ("DOT provides

4 - OPINION AND ORDER

records in the form or format sought by the requester, if the records are readily reproducible in that form or format.").

Here, the parties disagree as to whether XML and/or XSR files of the data requested by plaintiff are "readily reproducible" or whether their creation places an undue burden on the DOT. Federal agencies must "provide records in the format requested by the requester if the records are readily reproducible, absent compelling evidence of significant interference or burden." Public.Resource.org v. U.S. Internal Rev. Serv., 78 F. Supp. 3d 1262, 1263 (N.D. Cal. 2015); see also TPS, Inc. v. U.S. Dep't. of Def., 330 F.3d 1191, 1195 (9th Cir. 2003) (FOIA "requires that the agency satisfy a FOIA request when it has the capability to readily reproduce documents in the requested format."). In other words, "'readily reproducible' is not… synonymous with 'technical[ly] feasible.' The Court may consider the burden on the defendant in determining whether the documents at issue are 'readily reproducible' in the format the plaintiff requests." Scudder v. Cent. Intelligence Agency, 25 F. Supp. 3d 19, 38 (D.D.C. 2014); see also 5 U.S.C. § 552(a)(3)(B) (agencies shall make "reasonable efforts" to maintain records in readily reproducible formats).

When assessing the reasonableness of the agency's efforts, the court must "accord substantial weight to an affidavit of an

5 - OPINION AND ORDER

agency concerning the agency's determination as to technical feasibility… and reproducibility." 5 U.S.C. § 552(a)(4)(B); Sample v. Bureau of Prisons, 466 F.3d 1086, 1088 (D.C. Cir. 2006) (an agency's "determination as to reproducibility, moreover, must be accorded 'substantial weight' by the reviewing court"). However, "such deference does not amount to a blanket exemption from judicial review of the agency's justification for declining to comply with a specific format request or failing to maintain records in readily reproducible formats." Scudder, 25 F. Supp. 3d at 39.

In this case, I find that the information sought by plaintiff in XML and/or XSR formats is not readily reproducible and would be burdensome for DOT to reproduce.

It is undisputed that DOT does not possess or maintain any XML or XSR files for the Tiller Trail Highway Project. Thompson Decl. at 4; Aguirre Decl. at 8-9. In fact, DOT designers do not create XML or XSR files with horizontal alignment, vertical alignment, final design surface, and existing ground surface; XML and SXR are not standard files created by DOT designers and are not normally used at any stage of the design process. Aguirre Decl. at 3, 7. Further, DOT does not provide data in XML and XSR files to contractors that are constructing highway projects. Id.

6 - OPINION AND ORDER

Plaintiff does not dispute the fact that DOT does not maintain information in XML or XSR formats. In fact, when plaintiff requested that DOT provide the data in XML format, he conceded that XML files are not a "typical GEOPAK format." Thompson Decl. Ex. 1 at 1. Plaintiff also concedes that DOT must export the underlying data from its files in order to create files in XML or XSR format. See id. Ex. 7 at 2. Thus, contrary to plaintiff's argument, compliance with his request would require DOT to create new records in XML or XSR formats. See Aguirre Decl. at 3-4; LaRoche v. U.S. Sec. & Exchange Comm'n, 289 Fed. Appx. 231 (2008) ([A]n agency is not required to create new documents in order to satisfy a FOIA request."); Yagman v. Brennan, 2015 WL 1285359 (C.D. Cal. 2015) (accord).

Moreover, according to the DOT, producing an XML file is a multi-step process that typically compiles three dimensional, survey data points into a ground surface file representing a physical original or completed surface. Specifically, the process entails the following steps:

> After survey information is collected and design data is produced, the first step is producing a data (DAT) file from the cross sections using the GEOPAK reports tool. The second step is to convert the data file to a TIN file using other GEOPAK terrain tools. Once the TIN file is created it can be visualized and corrective steps applied for accuracy. The third step is to convert the TIN file to a XML file using software tools… Using a separate software tool and to

7 - OPINION AND ORDER

> verify accuracy, the fourth step requires the XML file to be reimported back into a TIN file. Using another software tool, a fifth step [requires] a separate software tool to compare the initially produced TIN and the TIN produced from the created XML file. This tool compares the separate TIN files so that any errors can be corrected.

Aguirre Decl. at 6. DOT contends that converting the data to XML format would take from at least twenty-four to forty hours in order to ensure that the data was reformatted accurately. Aguirre Suppl. Decl. at 6.[3] As it must, the court affords great deference to the declarations of Mr. Aguirre.

Plaintiff does not dispute DOT's assertion that converting the data requested into XML format is a multi-step process or that the conversion process would require twenty-four to forty-eight hours to insure that the information was reformatted accurately. Rather, plaintiff contends that DOT already should have completed the first two steps (creating a TIN file), and that DOT previously has waived accuracy checks. See Mann Decl. at 5, 8.

However, plaintiff misapprehends the nature of DOT's assertion. DOT does not contend that it must employ a lengthy,

---

[3] This estimate is based on conversion of the data into an XML file. Mr. Aguirre estimates that the conversion process would take forty to forty-eight hours if plaintiff's request includes the XSR design file. Aguirre Suppl. Decl. at 6-7; Aguirre Decl. at 8.

8 - OPINION AND ORDER

multi-step process to confirm the accuracy of the underlying data plaintiff seeks to have converted into XML format. Rather, DOT asserts that it must employ such a process to verify that the underlying data exported from DOT files is converted accurately into an XML file, so that the information provided to plaintiff - i.e., the newly-created XML file - accurately represents the underlying data maintained by the DOT. Aguirre Suppl. Decl. at 7. I find this distinction important. Certainly, it is reasonable for DOT to confirm that information it produces pursuant to a FOIA request actually represents the information possessed and maintained by the agency. Given the time, effort, and resources required to convert the data plaintiff seeks into several XML and/or XSR files, I find that XML and XSR files are not readily reproducible and that their creation would place an undue burden on DOT. See generally Aguirre Suppl. Decl.

Plaintiff also argues that on two prior occasions the DOT complied with his requests for original ground surface files in XML format. See Mann Decl. at 3 (information requested in 2008 and 2009). However, the fact that DOT accommodated plaintiff twice in the past seven years does not constitute a waiver, admission or a business-as-usual practice such that DOT should be required to convert data into XML format in this or future instances. TPS, 330 F.3d at 1195.

9 - OPINION AND ORDER

Finally, DOT represents that it provided plaintiff with the underlying data DOT would use to create the XML file, and plaintiff does not dispute that he could convert the data provided by DOT into XML and/or XSR formats. Aguirre Decl. at 7-8; Pl.'s Resp. at 2. Under the circumstances, it is not the DOT's duty to shoulder the burden of converting data into specific file formats to further plaintiff's business interests, particularly at the unnecessary expense of governmental resources.

DOT also represents that it could produce the information sought by plaintiff in a CVS file format, which is the format in which DOT provides final design surfaces to its contractors. See Aguirre Decl. at 5-6. According to DOT, the CSV file can be read, used, and manipulated by any person and allows others to segregate and/or parse the data for import into other applications. Id. at 6. I therefore find that DOT has complied with its duties to maintain information in an accessible and readily reproducible format. Accordingly, if it has not already done so, DOT shall provide the information by plaintiff requested in CVS format.

///

///

///

10 - OPINION AND ORDER

## Conclusion

For the reasons set forth above, defendant's motion for summary judgment (doc. 21) is GRANTED. This case is DISMISSED. IT IS SO ORDERED.

Dated this 14 day of October, 2015.

                                Ann Aiken
                      United States District Judge